Electronically Received 09/18/2024 04:39 PM

SJL LAW LLP
Julian G. Senior (SBN: 219098)
Stefanie G. Jo (SBN: 281334)
841 Apollo Street, Suite 300
El Segundo, CA 90245
Tel. No.: 424.290.0720
Fax No.: 424.290.0721
mail@sjllegal.com (service at any other email address is invalid)

BATESCAREY LLP
Mark G. Sheridan (pro hac vice application to be submitted)
Mark A. Deptula (pro hac vice application to be submitted)
191 N. Wacker Drive, Suite 2400
Chicago, IL 60606
Tel. No.: 312.762.3100
msheridan@batescarey.com
mdeptula@batescarey.com

Attorneys for Plaintiff TRUCK INSURANCE EXCHANGE

**FILED**
Superior Court of California
County of Los Angeles
09/18/2024
David W. Slayton, Executive Officer / Clerk of Court
By: R. Lozano Deputy

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| TRUCK INSURANCE EXCHANGE,<br><br>Plaintiffs,<br><br>vs.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON; TENECOM LIMITED; DOMINION INSURANCE COMPANY LIMITED; ST. KATHERINE INSURANCE COMPANY LIMITED; LONDON & EDINBURGH GENERAL INS. CO. LTD.; BISHOPSGATE INSURANCE COMPANY LIMITED; NATIONAL CASUALTY COMPANY; NATIONAL CASUALTY CO. OF AMERICA LIMITED ; AND, DOES 1-50<br><br>Defendants. | **CASE NO.: 24STCV15462**<br><br>Assigned to: Hon. Elaine Lu<br>Department: 9<br><br>**PLAINTIFF TRUCK INSURANCE EXCHANGE'S AMENDED COMPLAINT FOR DECLARATORY RELIEF**<br><br>Action Filed: June 20, 2024<br>Trial: |

**AMENDED COMPLAINT FOR DECLARATORY RELIEF**

Plaintiff Truck Insurance Exchange ("Truck"), for its Amended Complaint against Defendants Certain Underwriters at Lloyd's, London ("Underwriters"), Tenecom Limited ("Tenecom"), Dominion Insurance Company Limited ("Dominion"), St. Katherine Insurance Company Limited ("St. Katherine"), London & Edinburgh General Ins. Co. Ltd. ("London & Edinburgh"), Bishopsgate Insurance Company Limited ("Bishopsgate"), National Casualty Company ("National Casualty"), National Casualty Company of America Limited ("National Casualty America"), and Does 1-50, states as follows:

**NATURE OF THE ACTION**

1. This action arises from a certain Memorandum Of Understanding ("MOU") that Truck entered into with Defendants. Defendants are among Truck's reinsurers, meaning that they have promised to reimburse Truck for certain claim payments that Truck made under specific policies of insurance. Defendants have asserted that the MOU limits the manner in which Truck may bill Defendants. Based on these assertions, Defendants have refused to pay millions of dollars' worth of Truck's reinsurance bills. Defendants' interpretation of the MOU is incorrect. In this action, Truck seeks a declaration that the MOU does not prohibit Truck from billing Defendants in the manner in which Truck has done.

**THE PARTIES**

2. Truck is an inter-insurance exchange organized and existing under the laws of the State of California with its principal place of business in Los Angeles, California.

3. Upon information and belief, Underwriters were members of the following Lloyd's syndicates: 860; 311; 484; 918; 986; 990; 56; 854; 190; and 772. These entities are authorized to underwrite and insure or reinsure risks within the Lloyd's, London, insurance market. They are organized under the laws of the United Kingdom, and have their principle place of business in London, England.

4. Upon information and belief, Tenecom is organized under the laws of the

United Kingdom and is registered with Companies' House, an executive agency of the United Kingdom. Tenecom has registered offices in London, England.

5. Upon information and belief, Tenecom is the successor under United Kingdom law to Accident and Casualty Insurance Company of Winterthur ("Winterthur"), and Tenecom has assumed all of the rights and obligations under Winterthur's reinsurance contracts.

6. Upon information and belief, Dominion is organized under the laws of the United Kingdom and is registered with Companies' House. Dominion has registered offices in London, England.

7. Upon information and belief, St. Katherine is organized under the laws of the United Kingdom and is registered with Companies' House. St. Katherine has registered offices in London, England.

8. Upon information and belief, London & Edinburgh is organized under the laws of the United Kingdom and is registered with Companies' House. London & Edinburgh has registered offices in Norwich, England.

9. Upon information and belief, Bishopsgate is organized under the laws of the United Kingdom and is registered with Companies' House. Bishopsgate has registered offices in Hampshire, England.

10. Upon information and belief, National Casualty is an Ohio corporation with its principal place of business in Scottsdale, Arizona.

11. Upon information and belief, National Casualty America is organized under the laws of the United Kingdom and is registered with Companies' House. National Casualty America has registered offices in London, England.

12. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1 through 50, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

13. Plaintiff is informed and believes, and thereon alleges, that each of the

fictitiously named Defendants are responsible in some manner for the matters herein alleged, and Plaintiff's damages and injuries as herein alleged were proximately caused by Defendants' wrongful actions.

14. Plaintiff is informed and believes, and thereon alleges, that, at all times relevant to the matters alleged in this action, each and every Defendant, including the fictitious named Defendants, were agents, employees, representatives and joint ventures of each of the other Defendants identified in this action, and in doing, or failing to do, the things alleged, that each of the Defendants was acting within the scope of such agency, employment, and joint venture with the consent of and ratification of each of the other Defendants.

15. This Court has personal jurisdiction over Defendants because Defendants have minimal contacts with the County of Los Angeles and exercising jurisdiction over Defendants would not be inconsistent with the Constitution of California or of the United States.

## FACTS

16. Truck issued a series of general liability insurance policies to Kaiser Cement & Gypsum Corporation ("Kaiser").

17. By the early 1980s, individuals alleging bodily injuries as a result of exposure to asbestos began suing Kaiser. Truck, along with certain other of Kaiser's insurers, began defending and indemnifying Kaiser with respect to these underlying asbestos bodily injury lawsuits.

18. Certain of Truck's obligations under its policies issued to Kaiser were reinsured by Defendants.

19. In the mid-1980s, it was clear that Truck would likely face some degree of liability under its policies to Kaiser in connection with the underlying asbestos bodily injury claims, but it was very unclear what those liabilities would be or precisely how Truck's insurance policies would apply.

20. This uncertainty led Truck and Defendants to enter into an interim billing

agreement in 1984 known as the Memorandum Of Understanding ("MOU"). (Ex. 1.)

21. The law firm Lord, Bissell & Brook negotiated the MOU on behalf of Defendants.

22. The MOU provides, in part, as follows:

> In view of the many uncertainties as to the proper rule of coverage attachment in the nationwide asbestos-related bodily injury litigation, the Reinsured [Truck] and Reinsurers [London Reinsurers] have reached the following Understanding as to the applicability of the aforementioned casualty excess reinsurance contracts to the asbestos-related bodily injury claims brought against the insured [Kaiser]. Both the Reinsured and the Reinsurers fully reserve all their rights as to all issues of coverage hereunder and agree that no activity by either party nor the Understanding set forth herein shall ever be argued or deemed to constitute a waiver of the contractual rights of the parties or their rights under the law in the event of future applicable legislation, case law decision or participation by the Reinsured in the Asbestos Claims Facility.

(Ex. 1 at ¶ 3.)

23. The MOU then set forth certain guidelines by which Truck could submit, and Defendants would pay, reinsurance billings arising out of the underlying Kaiser asbestos bodily injury claims.

24. For several years after the parties executed the MOU, Truck billed and Defendants paid various reinsurance billings arising out of the underlying Kaiser asbestos bodily injury claims.

25. As set forth above, however, the MOU identified "many uncertainties as to the proper rule of coverage attachment in the nationwide asbestos-related bodily injury litigation." (Ex. 1 at ¶ 3.) These uncertainties developed into disputes between Kaiser and its insurers as to how the insurance policies would apply to the underlying asbestos lawsuits.

26. In 2001, Truck initiated insurance coverage litigation in California state court with Kaiser and certain of Kaiser's other insurers to resolve these disputes.

27. This insurance coverage lawsuit was one of the first lawsuits in California to address a myriad of complex insurance coverage questions with respect to how

general liability policies apply to so-called "long-tail" claims like asbestos, i.e., claims for which bodily injury and/or property damage allegedly occurred over a long period of time but which did not immediately become apparent.

28. This insurance coverage lawsuit would be litigated for over two decades, and it is still pending in the California courts today.

29. While the uncertainties over Truck's insurance obligations were being resolved in the insurance coverage litigation, Truck ceased billing Defendants for Kaiser's asbestos bodily injury claims.

30. During the years that followed, the trial court resolved dozens of substantive issues as to how the insurance policies would apply to the underlying asbestos claims. Several issues were taken up to the California Appellate and Supreme Courts. Additionally, when Kaiser filed bankruptcy, the coverage litigation was stayed for a period of time.

31. Finally, on January 7, 2022, the California Court of Appeal issued an opinion that resolved one of the last remaining significant coverage issues. Truck Insurance Exchange v. Kaiser Cement, 2022 WL 71771, No. B278091 (Cal. App. Jan. 7, 2022).

32. This opinion provided the necessary clarity that Truck required to resume billing its reinsurers.

33. Accordingly, in 2023, Truck resumed submitting reinsurance billings arising out of the Kaiser underlying asbestos bodily injury claims to Defendants.

34. These billings did not reflect the now-outdated assumptions underlying the MOU.

35. Instead, these billings accurately reflected the manner in which Truck actually paid the Kaiser asbestos bodily injury claims as dictated by the various rulings the California courts had made in the Kaiser insurance coverage litigation in the many decades since the MOU was executed in 1984.

36. For example, the MOU had assumed that multiple Truck policies would

respond to a single underlying asbestos bodily injury claim. The California courts, however, had ruled that Kaiser could select a single Truck policy to pay the entire amount of each underlying asbestos bodily injury claim. Kaiser had selected the 1974 Truck policy as the sole policy under which Truck should pay the underlying asbestos claims. Abiding by the court ruling and Kaiser's selection, Truck paid the underlying asbestos claims on this basis.

37. Similarly, the MOU had assumed that the asbestos bodily injury claims would be aggregated together such that Truck would pay only a single policy limit for all such claims per policy year. The California courts, however, ruled that each asbestos claim constituted a separate "occurrence" such that the Truck policies would provide a separate policy limit for each individual underlying asbestos bodily injury claim. Abiding by this court decision, Truck began paying the underlying asbestos claims on that basis.

38. The Defendants have refused to pay Truck's reinsurance billings on the basis that those billings did not comply with the MOU.

39. Defendants have taken this position even though:

- the MOU itself was merely an interim agreement "[i]n view of the many uncertainties as to the proper rule of coverage attachment in the nationwide asbestos-related bodily injury litigation";
- Truck had, in the MOU itself, "fully reserve[d] all [its] rights as to all issues of coverage herein"; and
- Defendants agreed in the MOU never to argue that the MOU "constitute[d] a waiver of the contractual rights of the parties or their rights under the law in the event of future … case law decision," including the numerous case law decisions from the California courts in the Kaiser insurance coverage litigation.

(Ex. 1 at ¶ 3.)

**<u>COUNT I</u>**

**<u>(Declaratory Judgement)</u>**

40. Truck repeats and incorporates by reference the allegations set forth in

paragraphs 1 through 39 above as though fully set forth herein.

41. The parties have a current dispute over the meaning of the MOU.

42. Defendants maintain that the MOU controls the manner in which Truck must bill Defendants for the Kaiser asbestos bodily injury claims.

43. Truck maintains that Truck should bill reinsurers for underlying claim payments in a manner consistent with how Truck actually paid those claims, and that the MOU does not prevent this because the MOU itself provides that it does not control "in the event of future … case law decision" of the kind that the California courts rendered in the Kaiser insurance coverage litigation.

44. Accordingly, this Court should declare that the MOU does not prevent Truck from billing the underlying Kaiser asbestos claims to Defendants in a manner consistent with the manner in which Truck actually paid those claims; and further declare that Defendants may not rely upon the MOU to reject Truck's reinsurance billings.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

WHEREFORE, Truck respectfully requests that this Court enter judgment as follows:

(i) Declare that the MOU does not prevent Truck from billing the underlying Kaiser asbestos claims to Defendants in a manner consistent with how Truck actually paid those claims;

(ii) Declare that Defendants may not rely upon the MOU to reject Truck's reinsurance billings;

(iii) Grant Truck such other further relief as may be just and proper.

DATED: September 18, 2024

SJL LAW LLP

By: ______________________________
Julian G. Senior
Stefanie G. Jo
Attorneys for Defendant
TRUCK INSURANCE EXCHANGE

Of Counsel:

Mark G. Sheridan
Mark A. Deptula
Attorneys for Defendant
TRUCK INSURANCE EXCHANGE

# EX. 1

LORD, BISSELL & BROOK
115 SOUTH LA SALLE STREET
CHICAGO, ILLINOIS 60603
(312) 443-0700
CABLE: LOWIRCO CGO
TELEX: 25-3070

LOS ANGELES OFFICE
3250 WILSHIRE BOULEVARD
LOS ANGELES, CALIFORNIA 90010
(213) 487-7064
TELEX: 18-1135

# MEMORANDUM OF UNDERSTANDING

This Memorandum sets forth the Understanding of the TRUCK INSURANCE EXCHANGE (hereafter "Reinsured") and Certain Underwriters at Lloyd's, London and London Companies (hereafter "Reinsurers") concerning the application of Casualty Excess Reinsurance Contracts issued to the Reinsured by Reinsurers in connection with the asbestos-related bodily injury claims brought against the Kaiser Cement and Gypsum Corporation (hereafter "Insured"):

1. The Reinsured under Policy No. 350-40-00 issued a series of Comprehensive General primary Liability policies to the Insured with the following limits of liability for bodily injury during the indicated periods:

(a) January 1, 1964 to January 29, 1971: $100,000 each person, $300,000 each occurrence and $300,000 aggregate products;

(b) January 30, 1971 to March 31, 1980: $500,000 each occurrence and in aggregate for products for bodily injury and property damage;

(c) April 1, 1980 to April 1, 1983: $1,500,000 in aggregate for all bodily injury and property damage arising out of products hazard.

2. Commencing on June 1, 1962 the Reinsurers issued successive Casualty Excess Reinsurance Contracts to the Reinsured which would apply to the Reinsured's products liability coverage with the Insured. There was no aggregate extension wording in these Reinsurance Contracts in the 1964 and 1965 years. The Reinsurance Contracts provided that the Reinsured's retention was $50,000 in the June 1, 1962 to June 1, 1968 years and $75,000 in the July 1, 1968 to July 1, 1971 years and $100,000 in the July 1, 1971 to July 1, 1973 years and $150,000 in the July 1, 1973 to July 1, 1975 years and $175,000 in the July 1, 1975 to July 1, 1976 year.

The Reinsured's retention for the period July 1, 1976 to July 1, 1979 was $200,000 but subject to a continuing annual index of $20,000 each year.

The Reinsured's retention was $250,000 in the July 1, 1979 to July 1, 1983 years and $262,500 in the July 1, 1983 year.

3. In view of the many uncertainties as to the proper rule of coverage attachment in the nationwide asbestos-related bodily injury litigation, the Reinsured and Reinsurers have reached the following Understanding as to the applicability of the aforementioned Casualty Excess Reinsurance Contracts to the asbestos-related bodily injury claims

brought against the Insured. Both the Reinsured and Reinsurers fully reserve all their rights as to all issues of coverage herein and agree that no activity by either party nor the Understanding set forth herein shall ever be argued or deemed to constitute a waiver of the contractual rights of the parties or their rights under the law in the event of future applicable legislation, case law decision or participation by the Reinsured in the Asbestos Claims Facility.

4. It is the Understanding of the Reinsured and Reinsurers that:

(a) All indemnity payments made and all expenses incurred by the Reinsured in the defense of the asbestos-related bodily injury claims brought against the Insured will be allocated to the aforesaid Comprehensive General Liability policies on the basis of the exposure theory of coverage as enunciated by the United States Court of Appeals for the Sixth Circuit in the <u>INA vs. Forty Eight Insulations</u> case;

(b) The Reinsured's retention under the aforesaid Casualty Excess Reinsurance Contracts will be applied so that there will be one single retention each year for all of the asbestos-related bodily injury claims brought against the Insured;

(c) Prior to July 1, 1978 the Reinsured's Ultimate Net Loss under the aforesaid Casualty Excess Reinsurance Contracts included allocated adjustment expenses and pro-rata legal expenses. In the July 1, 1976 and July 1, 1977 Reinsurance Contract years the pro-rata legal expenses will be calculated utilizing the Reinsured's retention as of its July 1, 1984 indexed amount.

(d) Subsequent to July 1, 1978 the Reinsured's Ultimate Net Loss under the aforesaid Casualty Excess Reinsurance Contracts included allocated adjustment expenses and legal expenses;

(e) The per occurrence deductible language employed in the Comprehensive General Liability policies issued by the Reinsured to the Insured was intended to be used as a premium determination device and the stated deductibles do not apply to each individual asbestos-related bodily injury claim;

(f) The Reinsured presently is defending and indemnifying the Insured in the asbestos-related bodily injury litigation. The Reinsured in the future will not conclude any claim whether by stipulation, dismissal, settlement or satisfaction of judgment without first attempting to ascertain and record the dates when each individual claimant was exposed to the asbestos contain-

ing products of the Insured as well as the date of first discovery of manifestation of bodily injury, sickness or disease of each claimant;

(g) The Reinsured will also attempt to secure these exposure and manifestation dates in connection with the asbestos-related bodily injury claims against the Insured which it has closed in the past prior to the date of this Memorandum of Understanding;

(h) The Reinsured will on a reasonable basis but not less than twice a year provide Reinsurers with an accounting of its indemnity and expense payments in connection with the asbestos-related bodily injury claims against the Insured and will further upon reasonable notice permit Reinsurers to review its open and closed files;

(i) This Memorandum of Understanding does not apply to the asbestos-related property damage claims brought against the Insured.

TRUCK INSURANCE EXCHANGE

Dated: July 2, 1984 By: Duane A. Cooper

Title: Assistant Vice President Claims Farmers Insurance Group Companies

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND LONDON COMPANIES

Dated: June 28, 1984 By: Lord, Bissell & Brook per: Thomas W. Seyle

Title: Attorneys for Certain Underwriters at Lloyd's & London Companies