SJL LAW LLP
Julian G. Senior (SBN: 219098)
Sogol Gohari (SBN:346260)
841 Apollo Street, Suite 300
El Segundo, CA 90245
Tel. No.: 424.290.0720
Fax No.: 424.290.0721
mail@sjllegal.com (service at any other email address is invalid)

BATESCAREY LLP
Mark G. Sheridan (pro hac vice application to be submitted)
Mark A. Deptula (pro hac vice application to be submitted)
191 N. Wacker Drive, Suite 2400
Chicago, IL 60606
Tel. No.: 312.762.3100
msheridan@batescarey.com
mdeptula@batescarey.com

Attorneys for Defendant TRUCK INSURANCE EXCHANGE

**Electronically FILED by Superior Court of California, County of Los Angeles 6/20/2024 3:38 PM David W. Slayton, Executive Officer/Clerk of Court, By J. Nunez, Deputy Clerk**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | | |
|---|---|---|
| TRUCK INSURANCE EXCHANGE,<br><br>Plaintiffs,<br><br>vs.<br><br>EQUITAS INSURANCE LIMITED, and TENECOM LIMITED,<br><br>Defendants. | ) | **CASE NO.:** 24STCV15462<br><br>Assigned to:<br>Department:<br><br>**COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT, AND TO STAY ARBITRATION**<br><br>Action Filed:<br>Trial: |

Plaintiff Truck Insurance Exchange ("Truck"), for its Complaint against Defendants Equitas Insurance Limited ("Equitas") and Tenecom Limited ("Tenecom"), states as follows:

## NATURE OF THE ACTION

1. This action arises from a certain Memorandum Of Understanding ("MOU") that Truck entered into with Defendants' predecessors-in-interest, certain Underwriters at Lloyd's London and London Companies ("London Reinsurers"). Defendants are among Truck's reinsurers, meaning that they have promised to reimburse Truck for certain claim payments that Truck made under specific policies of insurance. Defendants have asserted that the MOU limits the manner in which Truck may bill Defendants. Based on these assertions, Defendants have refused to pay millions of dollars' worth of Truck's reinsurance bills. Defendants' interpretation of the MOU is incorrect. In this action, Truck seeks a declaration that the MOU does not prohibit Truck from billing Defendants in the manner in which Truck has done. Truck also seeks damages for Defendants' breach of the MOU. Finally, Truck seeks to enjoin an unauthorized arbitration that Defendants have commenced.

## THE PARTIES

2. Truck is an inter-insurance exchange organized and existing under the laws of the State of California with its principal place of business in Los Angeles, California.

3. Upon information and belief, Equitas is a corporation organized under the laws of the United Kingdom and is registered with Companies' House, an executive agency of the United Kingdom. Equitas has registered offices in London, England.

4. Pursuant to a transaction approved by the English High Court of Justice on or about June 30, 2009, Equitas has assumed all of the rights and obligations under Underwriters at Lloyd's' non-life insurance and reinsurance contracts for years 1992 and prior.

5. Upon information and belief, Tenecom is a corporation organized under the laws of the United Kingdom and is registered with Companies' House, an executive agency of the United Kingdom. Tenecom has registered offices in London, England.

6. Upon information and belief, Tenecom is the successor under United Kingdom law to Accident and Casualty Insurance Company of Winterthur ("Winterthur"), and Tenecom has assumed all of the rights and obligations under Winterthur's reinsurance contracts.

7. This Court has personal jurisdiction over Defendants because Defendants have minimal contacts with the County of Los Angeles and exercising jurisdiction over Defendants would not be inconsistent with the Constitution of California or of the United States.

## FACTS

8. Truck issued a series of general liability insurance policies to Kaiser Cement & Gypsum Corporation ("Kaiser").

9. By the early 1980s, individuals alleging bodily injuries as a result of exposure to asbestos began suing Kaiser. Truck, along with certain other of Kaiser's insurers, began defending and indemnifying Kaiser with respect to these underlying asbestos bodily injury lawsuits.

10. Certain of Truck's obligations under its policies issued to Kaiser were reinsured by London Reinsurers.

11. In the mid-1980s, it was clear that Truck would likely face some degree of liability under its policies to Kaiser in connection with the underlying asbestos bodily injury claims, but it was very unclear what those liabilities would be or precisely how Truck's insurance policies would apply.

12. This uncertainty led Truck and London Reinsurers to enter into an interim billing agreement in 1984 known as the Memorandum Of Understanding ("MOU"). (Ex. 1.)

13. The law firm Lord, Bissell & Brook negotiated the MOU on behalf of London Reinsurers.

14. The MOU provides, in part, as follows:

> In view of the many uncertainties as to the proper rule of coverage attachment in the nationwide asbestos-related bodily injury litigation, the Reinsured [Truck] and Reinsurers [London Reinsurers] have reached the following Understanding as to the applicability of the aforementioned casualty excess reinsurance contracts to the asbestos-related bodily injury claims brought against the insured [Kaiser]. Both the Reinsured and the Reinsurers fully reserve all their rights as to all issues of coverage hereunder and agree that no activity by either party nor the Understanding set forth herein shall ever be argued or deemed to constitute a waiver of the contractual rights of the parties or their rights under the law in the event of future applicable legislation, case law decision or participation by the Reinsured in the Asbestos Claims Facility.

(Ex. 1 at ¶ 3.)

15. The MOU then set forth certain guidelines by which Truck could submit, and London Reinsurers would pay, reinsurance billings arising out of the underlying Kaiser asbestos bodily injury claims.

16. For several years after the parties executed the MOU, Truck billed and London Reinsurers paid various reinsurance billings arising out of the underlying Kaiser asbestos bodily injury claims.

17. As set forth above, however, the MOU identified "many uncertainties as to the proper rule of coverage attachment in the nationwide asbestos-related bodily injury litigation." (Ex. 1 at ¶ 3.) These uncertainties developed into disputes between Kaiser and its insurers as to how the insurance policies would apply to the underlying asbestos lawsuits.

18. In 2001, Truck initiated insurance coverage litigation in California state court with Kaiser and certain of Kaiser's other insurers to resolve these disputes.

19. This insurance coverage lawsuit was one of the first lawsuits in California to address a myriad of complex insurance coverage questions with respect to how general liability policies apply to so-called "long-tail" claims like asbestos, *i.e.*, claims for which bodily injury and/or property damage allegedly occurred over a long period of time but which did not immediately become apparent.

20. This insurance coverage lawsuit would be litigated for over two decades, and it is still pending in the California courts today.

21. While the uncertainties over Truck's insurance obligations were being resolved in the insurance coverage litigation, Truck ceased billing Defendants for Kaiser's asbestos bodily injury claims.

22. During the years that followed, the trial court resolved dozens of substantive motions as to how the insurance policies would apply to the underlying asbestos claims. Several issues were taken up to the California Appellate and Supreme Courts. Additionally, when Kaiser filed bankruptcy, the coverage litigation was stayed for a period of time.

23. Finally, on January 7, 2022, the California Court of Appeal issued an opinion that resolved one of the last remaining significant coverage issues. *Truck Insurance Exchange v. Kaiser Cement*, 2022 WL 71771, No. B278091 (Cal. App. Jan. 7, 2022).

24. This opinion provided the necessary clarity that Truck required to resume billing its reinsurers.

25. Accordingly, in 2023, Truck resumed submitting reinsurance billings arising out of the Kaiser underlying asbestos bodily injury claims to Defendants.

26. These billings did not reflect the now-outdated assumptions underlying the MOU.

27. Instead, these billings accurately reflected the manner in which Truck actually paid the Kaiser asbestos bodily injury claims as dictated by the various rulings the California courts had made in the Kaiser insurance coverage litigation in the many decades since the MOU was executed in 1984.

28. For example, the MOU had assumed that <u>multiple</u> Truck policies would respond to a single underlying asbestos bodily injury claim. The California courts, however, had ruled that Kaiser could select a <u>single</u> Truck policy to pay the entire amount of each underlying asbestos bodily injury claim. Kaiser had selected the 1974

Truck policy as the sole policy under which Truck should pay the underlying asbestos claims. Abiding by the court ruling and Kaiser's selection, Truck paid the underlying asbestos claims on this basis.

29. Similarly, the MOU had assumed that the asbestos bodily injury claims would be aggregated together such that Truck would pay only a single policy limit for <u>all</u> such claims per policy year. The California courts, however, ruled that <u>each</u> asbestos claim constituted a separate "occurrence" such that the Truck policies would provide a separate policy limit for <u>each</u> individual underlying asbestos bodily injury claim. Abiding by this court decision, Truck began paying the underlying asbestos claims on that basis.

30. On May 24, 2024, Defendants, through their agent Resolute Management Services Ltd., stated that they were rejecting Truck's reinsurance billings on the basis that those billings did not comply with the MOU. (Ex. 2.)

31. Defendants' letter did not acknowledge that:

- the MOU itself was merely an interim agreement "[i]n view of the many uncertainties as to the proper rule of coverage attachment in the nationwide asbestos-related bodily injury litigation";
- Truck had, in the MOU itself, "fully reserve[d] all [its] rights as to all issues of coverage herein"; and
- Defendants agreed in the MOU never to argue that the MOU "constitute[d] a waiver of the contractual rights of the parties or their rights under the law in the event of future … case law decision," including the numerous case law decisions from the California courts in the Kaiser insurance coverage litigation.

(Ex. 1 at ¶ 3.)

32. In its letter, Defendants also demanded that Truck submit to arbitration the question of whether the MOU provided a basis on which Defendants could deny Truck's reinsurance billings.

/ / /

**COUNT I**

**(Declaratory Judgement)**

33. Truck repeats and incorporates by reference the allegations set forth in paragraphs 1 through 32 above as though fully set forth herein.

34. The parties have a current dispute over the meaning of the MOU.

35. Defendants maintain that the MOU controls the manner in which Truck must bill Defendants for the Kaiser asbestos bodily injury claims.

36. Truck maintains that Truck should bill reinsurers for underlying claim payments in a manner consistent with how Truck actually paid those claims, and that the MOU does not prevent this because the MOU itself provides that it does not control "in the event of future … case law decision" of the kind that the California courts rendered in the Kaiser insurance coverage litigation.

37. Accordingly, this Court should declare that the MOU does not prevent Truck from billing the underlying Kaiser asbestos claims to Defendants in a manner consistent with the manner in which Truck actually paid those claims; and further declare that Defendants may not rely upon the MOU to reject Truck's reinsurance billings.

**COUNT II**

**(Breach of Contract)**

38. Truck repeats and incorporates by reference the allegations set forth in paragraphs 1 through 32 above as though fully set forth herein.

39. In Paragraph 3 of the MOU, Defendants acknowledged that Truck "fully reserved all [its] rights as to all issues of coverage herein." (Ex. 2.)

40. Also in Paragraph 3 of the MOU, Defendants agreed that "no activity by either party nor the Understanding set forth herein shall ever be argued or deemed to constitute a waiver of [Truck's] contractual rights … or [Truck's] rights under law in the event of future … case law decision." (Ex. 2.)

/ / /

41. Defendants have breached Paragraph 3 of the MOU by asserting that Truck did *not* reserve its rights and that the MOU *does* constitute a waiver of Truck's right to bill Defendants in the manner inconsistent with the MOU but consistent with the case law decisions rendered in the Kaiser coverage litigation.

42. Defendants' breach of the MOU has caused Truck to incur damages. Had Defendants abided by the promises they made in the MOU that they would never argue that the MOU prevented Truck from asserting its contractual rights in a manner consistent with future case law decisions, Defendants would have paid Truck's reinsurance billings. Additionally, had Defendants abided by Paragraph 3 of the MOU, Truck would not have been forced to incur expenses responding to Defendants' arbitration demand.

**COUNT III**

**(Injunctive Relief)**

43. Truck repeats and incorporates by reference the allegations set forth in paragraphs 1 through 32 above as though fully set forth herein.

44. Defendants have demanded that Truck submit to arbitration the question of whether the MOU provides a basis on which Defendants can refuse to pay Truck's reinsurance billings arising out of the underlying Kaiser asbestos bodily injury claims. (Ex. 2.)

45. The MOU does not contain an arbitration provision.

46. Truck has not otherwise agreed to arbitrate this question.

47. Truck will be severely prejudiced if it is compelled to arbitrate a question that it did not agree to arbitrate.

48. Accordingly, Defendants should be compelled to withdraw their arbitration demand and should be enjoined from taking any action to advance the unauthorized arbitration they have commenced.

WHEREFORE, Truck respectfully requests that this Court enter judgment as follows:

(i) Declare that the MOU does not prevent Truck from billing the underlying Kaiser asbestos claims to Defendants in a manner consistent with how Truck actually paid those claims;

(ii) Declare that Defendants may not rely upon the MOU to reject Truck's reinsurance billings;

(iii) Award Truck damages for Defendants' breach of the MOU;

(iv) Compel Defendants to withdraw their arbitration demand and enjoin them from taking any action to advance that unauthorized arbitration; and

(v) Grant Truck such other further relief as may be just and proper.

DATED: June 20, 2024

SJL LAW LLP

By: ______________________________

Julian G. Senior
Sogol Gohari
Attorneys for Defendant
TRUCK INSURANCE EXCHANGE

Of Counsel:

Mark G. Sheridan
Mark A. Deptula
Attorneys for Defendant
TRUCK INSURANCE EXCHANGE

# EX. 1

LORD, BISSELL & BROOK
115 SOUTH LA SALLE STREET
CHICAGO, ILLINOIS 60603
(312) 443-0700
CABLE: LOWIRCO CGO
TELEX: 25-3070

LOS ANGELES OFFICE
3250 WILSHIRE BOULEVARD
LOS ANGELES, CALIFORNIA 90010
(213) 487-7064
TELEX: 18-1135

# MEMORANDUM OF UNDERSTANDING

This Memorandum sets forth the Understanding of the TRUCK INSURANCE EXCHANGE (hereafter "Reinsured") and Certain Underwriters at Lloyd's, London and London Companies (hereafter "Reinsurers") concerning the application of Casualty Excess Reinsurance Contracts issued to the Reinsured by Reinsurers in connection with the asbestos-related bodily injury claims brought against the Kaiser Cement and Gypsum Corporation (hereafter "Insured"):

1. The Reinsured under Policy No. 350-40-00 issued a series of Comprehensive General primary Liability policies to the Insured with the following limits of liability for bodily injury during the indicated periods:

(a) January 1, 1964 to January 29, 1971: $100,000 each person, $300,000 each occurrence and $300,000 aggregate products;

(b) January 30, 1971 to March 31, 1980: $500,000 each occurrence and in aggregate for products for bodily injury and property damage;

(c) April 1, 1980 to April 1, 1983: $1,500,000 in aggregate for all bodily injury and property damage arising out of products hazard.

2. Commencing on June 1, 1962 the Reinsurers issued successive Casualty Excess Reinsurance Contracts to the Reinsured which would apply to the Reinsured's products liability coverage with the Insured. There was no aggregate extension wording in these Reinsurance Contracts in the 1964 and 1965 years. The Reinsurance Contracts provided that the Reinsured's retention was $50,000 in the June 1, 1962 to June 1, 1968 years and $75,000 in the July 1, 1968 to July 1, 1971 years and $100,000 in the July 1, 1971 to July 1, 1973 years and $150,000 in the July 1, 1973 to July 1, 1975 years and $175,000 in the July 1, 1975 to July 1, 1976 year.

The Reinsured's retention for the period July 1, 1976 to July 1, 1979 was $200,000 but subject to a continuing annual index of $20,000 each year.

The Reinsured's retention was $250,000 in the July 1, 1979 to July 1, 1983 years and $262,500 in the July 1, 1983 year.

3. In view of the many uncertainties as to the proper rule of coverage attachment in the nationwide asbestos-related bodily injury litigation, the Reinsured and Reinsurers have reached the following Understanding as to the applicability of the aforementioned Casualty Excess Reinsurance Contracts to the asbestos-related bodily injury claims

brought against the Insured. Both the Reinsured and Reinsurers fully reserve all their rights as to all issues of coverage herein and agree that no activity by either party nor the Understanding set forth herein shall ever be argued or deemed to constitute a waiver of the contractual rights of the parties or their rights under the law in the event of future applicable legislation, case law decision or partici-pation by the Reinsured in the Asbestos Claims Facility.

4. It is the Understanding of the Reinsured and Reinsurers that:

(a) All indemnity payments made and all expenses incurred by the Reinsured in the defense of the asbestos-related bodily injury claims brought against the Insured will be allocated to the aforesaid Comprehensive General Liability policies on the basis of the exposure theory of coverage as enunciated by the United States Court of Appeals for the Sixth Circuit in the INA vs. Forty Eight Insulations case;

(b) The Reinsured's retention under the afore-said Casualty Excess Reinsurance Contracts will be applied so that there will be one single retention each year for all of the asbestos-related bodily injury claims brought against the Insured;

(c) Prior to July 1, 1978 the Reinsured's Ultimate Net Loss under the aforesaid Casualty Excess Reinsurance Contracts included allocated adjustment expenses and pro-rata legal expenses. In the July 1, 1976 and July 1, 1977 Reinsurance Contract years the pro-rata legal expenses will be calculated utilizing the Reinsured's retention as of its July 1, 1984 indexed amount.

(d) Subsequent to July 1, 1978 the Reinsured's Ultimate Net Loss under the aforesaid Casualty Excess Reinsurance Contracts included allocated adjustment expenses and legal expenses;

(e) The per occurrence deductible language employed in the Comprehensive General Liability policies issued by the Reinsured to the Insured was intended to be used as a premium determination device and the stated deductibles do not apply to each individual asbestos-related bodily injury claim;

(f) The Reinsured presently is defending and indemnifying the Insured in the asbestos-related bodily injury litigation. The Reinsured in the future will not conclude any claim whether by stipulation, dismissal, settlement or satisfaction of judgment without first attempting to ascertain and record the dates when each individual claimant was exposed to the asbestos contain-

ing products of the Insured as well as the date of first discovery of manifestation of bodily injury, sickness or disease of each claimant;

(g) The Reinsured will also attempt to secure these exposure and manifestation dates in connection with the asbestos-related bodily injury claims against the Insured which it has closed in the past prior to the date of this Memorandum of Understanding;

(h) The Reinsured will on a reasonable basis but not less than twice a year provide Reinsurers with an accounting of its indemnity and expense payments in connection with the asbestos-related bodily injury claims against the Insured and will further upon reasonable notice permit Reinsurers to review its open and closed files;

(i) This Memorandum of Understanding does not apply to the asbestos-related property damage claims brought against the Insured.

TRUCK INSURANCE EXCHANGE

Dated: July 2, 1984 By: Duane A. Coyport

Title: Assistant Vice President Claims Farmers Insurance Group Companies

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND LONDON COMPANIES

Dated: June 28, 1984 By: Lord, Bissell & Brook per: Thomas W. Seyler

Title: Attorneys for Certain Underwriters at Lloyd's & London Companies

# EX. 2

**RESOLUTE MANAGEMENT SERVICES LIMITED**
Managing business reinsured by Equitas Limited

4TH FLOOR, 8 FENCHURCH PLACE, LONDON EC3M 4AJ
TEL: +44 (0) 20 7342 2000 FAX: +44 (0) 20 7342 2001

Cindi Monteleone ARe
Contractor Reinsurance Claims
Farmers Insurance Exchange
6301 Owensmouth Ave
Woodland Hills, CA 91367

24 May 2024

**Via E-mail Only**

**Re: Truck Insurance Exchange / Kaiser Cement and Gypsum**

Dear Cindi,

On the 7 July 2023, Truck announced that it "will soon be resuming the cession of individual bodily injury claim payments to reinsurers."

On the 7 August 2023, Underwriters responded, because Truck's proposed cession of individual ABIC payments would disregard the terms of the parties' 1984 MOU. Underwriters raised several queries and noted that Underwriters did not accept that Truck may "resume" its billing of Kaiser's ABIC losses/expenses.

On the 12 March 2024, Underwriters received Truck's response, which was dated 22 February 2024. Meanwhile, during the seven intervening months, Truck submitted eighty-eight separate Kaiser ABIC billings [**Billings**] to the Casualty Excess of Loss Reinsurance Contract incepting 1 July 1973 [the **1973 Treaty**].

The Billings do not comport with the parties' prior settlement agreement, which was memorialized in the 1984 MOU. Moreover, based on Truck's March 2024 response to Underwriters, it appears that Truck's deviation is intentional.

As you know, the 1984 MOU memorializes the settlement of various issues between the parties, including (but not limited to) issues respecting the 1973 Treaty. At the time of Truck's original ABIC losses, none of those individual losses exceeded the amount of Truck's retention. Moreover, the parties did not agree on the scope of the Treaty's event-based coverage. Accordingly, there was no avenue of recovery available to Truck under the treaties, including the 1973 Treaty.

The 1973 Treaty contains Aggregate Extension Clause [**AEC**] coverage, which is mandatory with respect to third party liability policies subject to aggregate limits of liability. The parties knew, however, that the 1974 policy that Truck issued to Kaiser did not contain an aggregate limit. Therefore, absent a compromise between the parties, Truck could not recover under the 1973 Treaty's AEC coverage for Kaiser's ABIC losses/expenses.

The parties reached a settlement whereby they agreed to treat the 1974 Truck policy (among others) as containing an "in aggregate" limit, so that Truck could access the AEC coverage contained in the 1973 Treaty. This compromise settlement was memorialized in the 1984 MOU. With that understanding, Truck billed (and Underwriters paid) Kaiser's ABIC losses/expenses until 1999 when Truck reported that the so-deemed "in aggregate" amount of the 1974 policy and others had been exhausted.

From 1999 until 2023, Truck never submitted another Kaiser ABIC loss/expense bill to the 1973 Treaty. Those twenty-four bill-free years are telling.

Truck seeks to justify its recent billings by pointing to the long-pending DJ action between Truck and Kaiser and to Kaiser's bankruptcy filing. But neither of those proceedings changed the bargain that was struck between Truck and Underwriters in 1984.

Truck points to two decisions of the California Appellate Court (dated 2007 and 2022) as "case law developments" that permit Truck to renege on its 40-year-old agreement with Underwriters. But neither of those decisions effects the "in aggregate" settlement between Truck and Underwriters, and Underwriters do not accept that Truck can renege on its agreement with Underwriters or bill Underwriters for Kaiser ABIC losses/expenses in addition to the single AEC coverage limit made available under the 1973 Treaty.

There are many other deficiencies with Truck's billings, including (but not limited to) the process through which they have been billed, which is the subject of a formal objection lodged with Guy Carpenter. The rationales set forth above, however, are more than a sufficient basis on which to deny Truck's Billings.

Underwriters and Tenecom request that Truck formally withdraw each of its Billings by midnight of the 31 May 2024 with prejudice. If Truck fails to withdraw its billings by the deadline date, in accordance with the Arbitration provision contained in the 1973 Treaty, Underwriters and Tenecom request Truck to name its party-appointed arbitrator (within 30 days of receiving this letter). Either way, we look forward to your prompt response.

Underwriters and Tenecom continue to reserve all (and waive none) of their rights and defences respecting this matter, including the right to supplement and/or amend the basis of their denial.

Yours sincerely,

**Paul Burgess**
**Claims Operations Account Manager**

**cc. Philip Holt (Guy Carpenter)**
**Paul McCarter (Guy Carpenter)**