UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUCK INSURANCE EXCHANGE,<br>Plaintiff,<br>v.<br>CERTAIN UNDERWRITERS AT LLOYD'S LONDON et al.,<br>Defendants. | Case No. 2:24-cv-08157-SB-JC<br><br>ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION [DKT. NO. 31] |

Plaintiff Truck Insurance Exchange entered into a reinsurance agreement with Defendants in 1968 and a memorandum of understanding (MOU) interpreting that agreement in 1984. The former contained an arbitration agreement. After a dispute arose in 2023 about Defendants' payment obligations under the reinsurance agreement, Defendants initiated an arbitration. Plaintiff then filed this action, seeking declaratory relief as to the interpretation of one part of the MOU, which Plaintiff characterizes as distinct from the broader payment dispute. Defendants move to compel arbitration. Dkt. No. 31. The Court issued a tentative opinion and held a hearing on November 15, 2024. Because Plaintiff's claim is subject to the parties' arbitration agreement, the Court grants Defendants' motion.

I.

Beginning in the 1960s, Plaintiff issued a series of comprehensive liability policies to Kaiser Cement & Gypsum Company. Dkt. No. 31-1 ¶ 5. Plaintiff then entered into an excess "Contract of Reinsurance" with Defendants or their predecessors-in-interest. Dkt. No. 31-3. The original reinsurance contract in the record became effective June 20, 1968, and it was extended and modified through a series of addenda. *Id.* at 3 (reinsurance contract). The reinsurance contract contained an arbitration agreement, which provided that "if any dispute shall arise between [the parties] with reference to the interpretation of this Contract or the rights with respect to any transaction involved, the dispute shall be referred" to binding arbitration. *Id*. at 8.

In the early 1980s, Plaintiff began reporting claims for reinsurance to Defendants on defense and indemnity claims Plaintiff paid in connection with asbestos litigation against Kaiser. Dkt. No. 31-1 ¶¶ 6, 8. This led to a dispute about the recoverability of the losses under the reinsurance contract, the details of which are not before this Court. *Id*. ¶ 9. In 1984, the parties reached an agreement on how to handle the disputed claims, which they memorialized in a written "Memorandum of Understanding." *Id*. ¶ 10; Dkt. No. 31-5 (MOU). The MOU stated that it "sets forth the Understanding of [the parties] concerning the application of Casualty Excess Reinsurance Contracts issued to [Plaintiff] by [Defendants] in connection with the asbestos-related bodily injury claims brought against [Kaiser]." Dkt. No. 31-5 at 2 of 6. Section 3 of the MOU, on which the parties now focus, provided:

> In view of the many uncertainties as to the proper rule of coverage attachment in the nationwide asbestos-related bodily injury litigation, the [parties] have reached the following Understanding as to the applicability of the aforementioned Casualty Excess Reinsurance Contracts to the asbestos-related bodily injury claims brought against [Kaiser]. Both [Plaintiff] and [Defendants] fully reserve all their rights as to all issues of coverage herein and agree that no activity by either party nor the Understanding set forth herein shall ever be argued or deemed to constitute a waiver of the contractual rights of the parties or their rights under the law in the event of future applicable legislation, case law decision or participation by [Plaintiff] in the Asbestos Claims Facility.

*Id*. at 3–4 of 6. The MOU then recited three pages of agreements as to how the reinsurance contract applied to asbestos-related bodily injury claims paid by Plaintiff. *Id*. at 4–6 of 6.

Plaintiff stopped billing Defendants for asbestos losses related to Kaiser in 1999. Dkt. No. 31-1 ¶ 12. After nearly 25 years of submitting no bills and receiving no payments, Plaintiff informed Defendants in July 2023 that it would resume billing Defendants, and then submitted 88 bills for reimbursement by March 2024. Dkt. No. 31-1 ¶ 16; Dkt. No. 31-7. Defendants responded by

demanding that Plaintiff withdraw its bills or initiate arbitration. *Id*. ¶ 17; Dkt. No. 31-10.[1]

Plaintiff then filed this action in state court against two of the reinsurers. Dkt. No. 3 (compl.). In September, the remaining defendants joined the arbitration, serving an amended arbitration demand on Plaintiff. Dkt. No. 31-14 ¶ 4; Dkt. No. 31-16. Plaintiff then amended its complaint, removing its claim for breach of contract and naming all Defendants. The amended complaint conspicuously avoids referencing the reinsurance contract and seeks only a declaratory judgment that "the MOU does not prevent [Plaintiff] from billing the underlying Kaiser asbestos claims to Defendants in a manner consistent with how [Plaintiff] actually paid those claims" and that "Defendants may not rely upon the MOU to reject [Plaintiff's] reinsurance billings." Dkt. No. 1-2 at 9.

Invoking the arbitration agreement in the reinsurance contract, Defendants removed the case under 9 U.S.C. § 205 and now move to compel arbitration and dismiss or stay Plaintiff's complaint. Dkt. Nos. 1, 31. Although the parties have selected their respective arbitrators (who must in turn select an umpire), it appears that they are waiting to proceed with the arbitration until the arbitrability of this part of the dispute is resolved.

## II.

An arbitration agreement in a commercial contract that includes foreign parties (like many of the defendants here) is subject to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. 9 U.S.C. §§ 201, 202. Arbitration agreements subject to the Convention are governed by Chapter 2 of the Federal Arbitration Act (FAA), and also by Chapter 1 to the extent Chapter 1 is not in conflict with Chapter 2 or the Convention. *Id*. §§ 202, 208. It is undisputed that this case is subject to the Convention *if* it relates to the reinsurance contract, but Plaintiff contends that its claim involves only the MOU, which does not have its own arbitration agreement.

---

[1] The parties provide little explanation of their dispute, and the details do not appear to be material to the question of arbitrability before this Court. Plaintiff's position appears to be that intervening changes in California law render the MOU outdated and allow Plaintiff to bill Defendants for additional payments. *See* Dkt. No. 1-2 ¶¶ 26–34.

The FAA "reflects the fundamental principle that arbitration is a matter of contract." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 147 (2024) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). Thus, when parties have agreed to arbitrate a dispute, it must be submitted to arbitration. *Id*. at 148. "The FAA limits the role of the judiciary to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Johnson v. Walmart Inc.*, 57 F.4th 677, 680 (9th Cir. 2023) (cleaned up). Doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, but no such presumption applies to disputes about the existence of an agreement. *Id*. at 680–81.

When two wholly separate agreements are at issue, the existence of an arbitration agreement in one contract does not necessarily require arbitration of disputes arising from the other contract, but "where two contracts are merely interrelated contracts in an ongoing series of transactions, an arbitration provision in one contract could apply to subsequent contracts." *Id*. at 683 (cleaned up).

III.

Notwithstanding Plaintiff's efforts to avoid the reinsurance contract, the Court has little difficulty concluding that this case falls within the parties' arbitration agreement. It is undisputed that the parties validly agreed to arbitrate "any dispute [that] shall arise between [the parties] with reference to the interpretation of [the reinsurance contract] or the rights with respect to any transaction involved." Dkt. No. 31-3 at 8. And while Plaintiff attempts to portray the MOU as a wholly separate agreement, the MOU by its terms sets forth the parties' understanding of the application of the reinsurance contract to the asbestos-related claims at issue here. Dkt. No. 31-5 at 2–4 of 6. Even the reservation of rights language Plaintiff asks the Court to interpret refers to the parties' "contractual rights" under the reinsurance contract. *Id*. at 4 of 6. The MOU is therefore closely related to the reinsurance contract and not a completely separate agreement.

Plaintiff argues that "[t]o prove its claims, [Plaintiff] will ask this Court to examine [the last sentence of § 3 of the MOU] and declare whether it allows [Plaintiff] to bill [Defendants] consistently with the development of California case law for asbestos bodily injury claims." Dkt. No. 34 at 15. But any billing of Defendants will be pursuant to the reinsurance contract; the MOU merely states the parties' understanding (at least as of 1984) of what the reinsurance contract requires, and Plaintiff conceded at the hearing that there is no right to payment

under the MOU independent of the reinsurance contract. The arbitrator must resolve the parties' dispute about Defendants' payment obligations under the reinsurance contract—the only payment obligations at issue. Plaintiff's attempt to excise a portion of that dispute and have a court separately decide the impact of one sentence of the MOU that does not expressly reference the reinsurance contract is not tenable; it relies on an artificial distinction that ignores the fact that the MOU itself interprets the terms of the reinsurance contract.

Plaintiff's cases are easily distinguishable. *Johnson*, on which Plaintiff principally relies, affirmed the district court's finding that an arbitration agreement in the terms on Walmart's website, to which the plaintiff had agreed when purchasing tires online, did not encompass a claim for breach of a subsequent service agreement for balancing and rotating tires, entered into at a Walmart auto service center. 57 F.4th at 679–80, 683. Similarly, the Ninth Circuit in *Perez v. Discover Bank* held that an arbitration agreement in one loan agreement did not encompass the plaintiff's discrimination claim related to an application for a different loan eight years later, as the claim did not arise out of the prior loan. 74 F.4th 1003, 1010–11 (9th Cir. 2023). Both these cases involved wholly separate transactions, with language in the arbitration agreement that did not extend to the subsequent dispute.

Here, in contrast, Plaintiff does not seek recovery on a claim unrelated to the reinsurance contract. Rather, Plaintiff artfully seeks declaratory relief interpreting one sentence of the MOU that has relevance only because it impacts Plaintiff's ability to recover payment under the reinsurance contract—the subject of the broader dispute the parties are arbitrating. On this record, the Court finds that the parties' dispute about the meaning of the MOU is a dispute "with reference to . . . the [parties'] rights with respect to" the reinsurance contract, and therefore falls within the scope of the arbitration agreement.[2] Dkt. No. 31-3 at 8; *see Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1380, 1382 (9th Cir. 1997) (characterizing nearly identical language in a reinsurance contract as "broad" and affirming order compelling arbitration of dispute over liquidation proceedings).

[2] The Court's conclusion is the same regardless of whether Plaintiff's challenge is correctly construed as a challenge to the existence of an agreement to arbitrate (as Plaintiff suggests) or as a dispute over the scope of the parties' agreement (as Defendants contend).

Accordingly, Defendants' motion to compel arbitration is granted, and the parties shall proceed to arbitration consistent with their agreement in the reinsurance contract.

IV.

The FAA provides that upon determining that a dispute is subject to an arbitration agreement, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Earlier this year, the Supreme Court unanimously held that § 3 does not permit a court "to dismiss the case instead of issuing a stay when the dispute is subject to arbitration and a party requests a stay pending arbitration." *Smith v. Spizzirri*, 601 U.S. 472, 474 (2024). At the hearing, Defendants requested that the Court stay the case instead of dismissing it in light of the parties' current impasse in selecting an umpire. This action is therefore stayed, and the clerk's office is directed to administratively close the case.

The Court expects the parties to cooperate in good faith to engage in the arbitration process pursuant to their agreement. The parties shall file a joint report on the status of the arbitration by January 10, 2025, with a supplemental joint status report due every 60 days thereafter until they notify the Court that arbitration is complete or until further order of the Court. The Court sets an in-person status conference on January 17, 2025 at 8:30 a.m.

If the parties fail to timely file a joint report, this action will be dismissed without prejudice for lack of prosecution. Alternatively, if the parties wish to avoid the need for status reports and conferences, they may file a stipulation agreeing to dismiss the action without prejudice, which relieves the Court of the obligation to monitor the status of the case, and which the Court will treat as functionally indistinguishable from a stay in terms of the parties' ability to seek confirmation, modification, or vacatur of an arbitration award.

Date: November 15, 2024

Stanley Blumenfeld, Jr.
United States District Judge